# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LIVING HOPE CHURCH OF THE NAZARENE;  )
GENE HEBERT, Lead Pastor of the Living Hope )
Church of the Nazarene; BEVERLY CHURCH )
OF THE NAZARENE; and KIM RICHARDSON, )
Senior Pastor of the Beverly Church of the )
Nazarene Living Hope Church of the Nazarene )
                        Plaintiffs, )

       v. )
                              )

CITY OF PEABODY; MICHAEL BONFANTI, )
Mayor and Chairman, ex-officio, Peabody Public )
Schools School Committee, in his official and )
individual capacities; JOHN TUNNEY, )
Business Manager of the Peabody Public Schools, )
in his official and individual capacities; )
NADINE BINKLEY, Superintendent of the )
Peabody Public Schools in her official and )
individual capacities, )
                       Defendants. )

Civil Case No. _____

**04 cv 12452 MLW**

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

COME NOW Plaintiffs, by counsel, and provide the following in support of their Motion for Preliminary Injunction in the above-captioned matter.

## I.    FACTS

Plaintiffs rely on the facts that are set forth in the Complaint, as well as the Affidavits and Exhibits contemporaneously filed herewith, and incorporate said facts by reference herein.

## II.     ARGUMENT

### A.     Preliminary Injunction Standard.

In the First Circuit, a plaintiff must prove four criteria when seeking a preliminary injunction: "(1) that [he or she] will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986). *See Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981). As shown *infra*, Plaintiffs meet these criteria, and a preliminary injunction should issue.

### B.     Plaintiffs Have Suffered and Continue to Suffer Irreparable Injury to Their Constitutional Rights Under the First and Fourteenth Amendments.

Limiting expression protected by the First Amendment in a designated public forum is governed by the same standard as that of limiting such expression in a traditional public forum, *i.e.*, speakers may be excluded from either forum "only when the exclusion is necessary to serve a compelling state interest *and* the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (emphasis added). A blanket ban on religious speech, which has occurred here under the guise of the Establishment Clause, hardly serves a compelling state interest and hardly constitutes a narrowly drawn exclusion. Moreover, "[i]t has long been held that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987) (quoting, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); 11A Charles A. Wright, *et*

*al., Federal Practice and Procedure*, § 2948.1 at 161 (2d ed. 1995) ("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary")).

Suppressing religious speech represents a classification "affecting fundamental rights," namely, the rights to free speech and free exercise of religion and, therefore, also violates the Equal Protection Clause of the Fourteenth Amendment. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights . . . are given the most exacting scrutiny"). As such, Defendants' application of their Policy inflicts irreparable harm on Plaintiffs.

Additionally, "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State*, 308 U.S. 147, 163 (1939); *accord Grayned v. City of Rockford*, 408 U.S. 104, 118 n.40 (1972). Despite the fact that Defendants' application of their Policy creates a designated public forum, Defendants nevertheless deny access to religious users. Should Defendants assert that Plaintiffs *could* go elsewhere, that is simply not required by the Constitution, as the Supreme Court explained. Even if some other facility became available, that would not change the irreparable injury suffered by Plaintiffs here. Plaintiffs will continue to suffer as long as the blanket exclusion of religious users is in place.

C.   **The Plaintiffs' First Amendment Freedoms Have Been Infringed upon by Defendants, and Thus, Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

1.   **FREEDOM OF SPEECH**

The Supreme Court has set forth the following three types of fora. *See Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45 (1983). Public fora are areas "which by long

3

tradition or by government fiat have been devoted to assembly and debate." *Id.* Designated (or limited) public fora are those which the state has voluntarily "opened for use by the public as a place for expressive activity." *Id.* Non-public fora consist of "[p]ublic property, that is not by tradition or designation a forum for public communication." *Id.* at 46.

A governmental organization that makes its facilities available for use by certain groups may not deny other specific (yet similar) groups equal use (or make specific restrictions) because of the religious content or viewpoint of their speech or activities. Public facilities become "designated public fora" when "authorities have 'by policy or practice' opened those facilities 'for indiscriminate use by the general public,' . . . or by some segment of the public . . ." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (citing *Perry Educ. Ass'n*, 460 U.S. at 47).

Government authorities may not discriminate against otherwise eligible speakers in designated public fora solely on the basis of the content of their speech unless the selective restriction "is necessary to serve a compelling state interest and . . . is narrowly drawn to achieve that end." *Widmar v. Vincent*, 454 U.S. 263, 270 (1981) (citation omitted); *accord Perry Educ. Ass'n*, 460 U.S. at 46. As a result, content-based censorship will be, in all but the most exceptional circumstances, inevitably unconstitutional.

> [A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. . . . The essence of this forbidden censorship is content control.... Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. . . . Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Police Dep't v. Mosley*, 408 U.S. 92, 95-96 (1972) (citations omitted). When "it is the content of

the speech that determines whether it is within or without [the government's] blunt prohibition," the regulation is unconstitutional. *Carey v. Brown*, 447 U.S. 455, 462 (1980).

### a.    Religious speech is protected under the First Amendment.

"[P]rivate religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995). Plaintiffs' speech is private religious speech which enjoys full constitutional protections. As the Supreme Court discussed in *Rosenberger v. Rector & Visitors of the Univ. of Va.*, (characterizing its previous holding in *Lamb's Chapel*), "discriminating against religious speech was discriminating on the basis of viewpoint." *Rosenberger*, 515 U.S. 819, 832 (1995). Such was the case despite no other simultaneous inclusion or exclusion of another religious viewpoint, *i.e.*, atheism, and such is the case here.

### b.    The Limited or Designated Public Forum.

If government opens a limited public forum (open for designated subject matter or only to certain speakers), "the State is not required to . . . allow persons to engage in every type of speech . . . .[However,] [t]he State's power to restrict speech . . . is not without limits. The restriction must not discriminate against speech on the basis of viewpoint . . .and the restriction must be 'reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (quoting *Cornelius*, 473 U.S. at 806) (citation omitted). Notably, regardless of whether government has opened a limited public forum or the forum remains non-public, "the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384, 394 (1993) (quoting *Cornelius*, 473 U.S. at 806); *see also Good News/Good Sports*

*Club v. Sch. Dist. of the City of Ladue*, 28 F.3d 1501, 1505 (8th Cir. 1994).

Again, the Supreme Court recently "reaffirm[ed its] holdings in Lamb's Chapel and Rosenberger that speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Good News Club*, 533 U.S. at 111-12.

The Supreme Court has firmly established that when the state creates a limited or designated public forum, it retains no authority to discriminate on the basis of viewpoint. Peabody Public Schools has opened its forum to varying forms of instruction and activities. It may not then prohibit instruction and activities simply because they come from a religious viewpoint. Discriminating on the basis of viewpoint is "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. Moreover, "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (citing *Perry Educ. Ass'n*, 460 U.S. at 46).

> **c.     Defendant Peabody Public Schools' "Community Use of School Facilities" Policy created a designated public forum open to a broad array of users.**

Defendant Peabody Public School's "Community Use of School Facilities" policy (hereinafter, "the Policy"), *see* Exhibit C (attached hereto), has created a designated (or limited) public forum for expressive purposes. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. at 267 (public facilities become designated public fora when "authorities have by policy or practice opened those facilities for indiscriminate use by the general public, . . . or by some segment of the public . . . .").

Peabody Public Schools are open to all manner of users. The Policy lists priorities for use

of their facilities, including but not limited to: "9. Local not for profit agencies serving the community at large, and not for profit agencies serving the general welfare." *The Policy*, Exhibit C at 1. Thus, depending on availability, *any* non-profit organization may access the facilities if it benefits the community or serves the general welfare.

Churches and religious organizations, such as Plaintiffs, not only serve the community at large, but they are *beneficial* to the community and for the general welfare, as the Supreme Court has recognized:

> [C]hurches, along with numerous other groups, produced these benefits, [ those being harmonious existence with the community at large and the fostering of moral or mental improvement], that we approved their exemption from property tax. The Court said quite plainly: "The State has an affirmative policy that considers these groups as beneficial and stabilizing influences in community life and finds this classification useful, desirable, and in the public interest."

*Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 13 (1989) (explaining that *Walz v. Tax Comm'n of New York City*, 397 U.S. 664, 672-73 (1970), did not uphold tax exemption as a religious accommodation, but a permissible recognition of religious organizations as beneficial to the community).[1]

In this case, the facilities were available for use at all relevant times to the filing of Plaintiffs' Complaint, *see Aff. Hebert* at ¶ 16. Additionally, Plaintiffs had previously been welcome in the Brown School, *see id.* at ¶¶ 8-13, and no further, legitimate reason has been stated by any Defendant to warrant non-renewal of the Plaintiffs' contract for use. *Id.* at ¶ 26-30.

---

[1]Plaintiff Beverly Church of the Nazarene has been recognized by the Massachusetts Department of Revenue as a 501(c)(3) corporation, and has issued a Certificate of Exemption. *See* Notice of Tax Exemption, No. 30048, attached hereto as Exhibit D.

> **d.** **Defendants have engaged in unconstitutional view point discrimination in excluding plaintiffs from Peabody Public Schools.**

Peabody Public Schools' Policy, in practice and as applied to Plaintiffs, is inconsistent with the Supreme Court's decision in *Good News Club*. Although exclusion of certain topics is permissible, those exclusions must meet constitutional standards. Denying Plaintiffs access simply because they are a religious group is a *prima facie* case of viewpoint discrimination. Regardless of the nature of the forum, any restriction on speech must be viewpoint neutral. *Lamb's Chapel*, 508 U.S. at 394. If the restriction is not viewpoint neutral, a court need not go further in deciding whether the intended use would be reasonable in light of the purpose served by the forum. As the *Good News* Court found: "Because the restriction is viewpoint discriminatory, we need not decide whether it is unreasonable in light of the purposes served by the forum." 533 U.S. at 107.

The Court, in *Good News,* found that otherwise permissible subjects cannot be excluded from a forum simply because the subjects are discussed from a religious viewpoint. *Id.* at 111-12. Therefore, a blanket exclusion of religious speech, such as the Peabody Public Schools' application of their Policy to Plaintiffs, is *prima facie* viewpoint discrimination and cannot withstand constitutional scrutiny, absent some compelling state interest. *Id.* at 112-14.

Assuming, *arguendo,* that Defendants' application of their Policy is not viewpoint discriminatory, Defendants' claim might theoretically have merit *if,* by continuing Plaintiffs' contract, the nature of the forum would be transformed beyond recognition from the community building's intended use. *Perry Educ. Ass'n*, 460 U.S. at 50; *see also Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 692 (1992). Clearly, however, Plaintiffs' intended services and meetings are "reasonable in light of the purpose served by the forum." *Good News Club*, 533 U.S.

at 107 (quoting *Cornelius*, 473 U.S. at 806). The forum, Peabody Public Schools, is routinely used for various forms of instruction from a wide spectrum of viewpoints. The written policy absolutely allows for such a wide array of uses in its list of priorities:

1.  Programs of instruction for Peabody Public School students
2.  School-affiliated athletic, cultural or social activities for students
3.  PSD Programs of Instruction for adults in the city
4.  Programs and activities of school-associated organizations (*e.g.*: PTO's, Library Mothers, Home and School Associations, etc.)
5.  Activities of the Peabody Recreation Department
6.  Official activities by Departments of City Government
7.  Cultural and Social activities by Departments of City Government
6. [sic] Local not-for-profit agencies serving the children or youth of the community
9.  Local not for profit agencies serving the community at large, and not for profit agencies serving the general welfare
10. Commercial instructional agencies serving students in the community

*See The Policy*, Exhibit C.

The only material difference between the type of instruction or activities that Plaintiffs seek to give and the type of instruction or activities that are routinely permitted under the Peabody Public Schools' community use Policy is that Plaintiffs' instruction and activities are from a religious perspective. Additionally, under Use Priority No. 9, there is no requirement that any "instruction" be given at all. The Policy merely requires that groups such as Plaintiffs serve either the community or the general welfare. Churches have long been considered a benefit to their surrounding communities, and it is apparent that the past administration thought so of Plaintiffs. *See Aff. Hebert* at ¶¶ 8-12.

In *Good News Club*, the Court concluded that "[w]hen Milford denied the Good News Club access to the school's limited public forum on the ground that the Club was religious in nature, it discriminated against the Club because of its religious viewpoint in violation of the Free Speech Clause of the First Amendment." 533 U.S. at 120. Likewise, when Defendants denied Plaintiffs

access to otherwise available public facilities solely because of their religious nature, Defendants discriminated against Plaintiffs' religious viewpoint in violation of the Free Speech Clause of the First Amendment.

**e.    Defendants lack any compelling interest to defend their exclusion of plaintiffs from their designated public forum.**

Plaintiffs cannot constitutionally be denied use of the forum simply because their instruction and activities are from a religious viewpoint, and where Defendants have not stated any compelling interest to support their exclusion. The Supreme Court in *Good News Club* reaffirmed the principle that this type of viewpoint discrimination cannot withstand constitutional scrutiny, absent some compelling state interest. 533 U.S. at 112-14.  There is no such compelling state interest in this matter.  Although "[t]here is no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to justify content-based restrictions on speech," *Pinette*, 515 U.S. at 761-62 (citing *Lamb's Chapel*, 508 U.S. at 394-95), the Supreme Court rejected the compelling-state-interest Establishment Clause defense where state property was open to a wide variety of uses, the state was not directly sponsoring the religious group's activity, and any benefit to religion would have been no more than incidental. *Pinette*, 515 U.S. at 762.  Such is the case here.

Further, potential problems or offended observers cannot amount to compelling interests: "In the light of the Supreme Court's consistent approval of the use of government property by religious groups…any reluctance toward allowing 'purported religions' to use community centers is inherently discriminatory and an untenable reason for the restrictions." *Daily v. N.Y. City Hous. Auth.*, 221 F. Supp. 2d 390, 405 (E.D.N.Y. 2002).  Although opening up the community center, in the *Daily* case, to religious activities could have led to the inclusion of "a plethora of purported religions,…the potential for 'havoc' or 'problems' is not sufficient to justify a regulation that on its

10

face reveals a hostility to a religious viewpoint." *Id.* at 405-06.   Likewise, "government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).  That private religious views may be controversial or even offensive to others does not justify governmental prohibition. Some observer's offense, taken because of Plaintiffs' use of the Brown School, does not amount to a legally compelling interest.

The Defendants' Policy as applied to Living Hope Church of the Nazarene includes a blanket exclusion of religious speech.  When Plaintiffs were denied the opportunity to renew their contractual use of the Brown School, they were told that their use would be "unconstitutional," *see Aff. Hebert* at ¶ 20, because of the "separation of church and state." *Id.* at ¶ 24.  Moreover, Defendant Tunney accused the Plaintiffs of seeking private gain, comparing them to a Kinko's commercial enterprise. *Id.* at ¶ 27.  That accusation came in response to Plaintiff Hebert's inquiry as to what other "issues" Mr. Tunney had with allowing the Plaintiffs to use the Brown School's facilities.  *Id.* at ¶ 26.  Aside from the lack of any Establishment Clause defense, obviously, Defendants do not have any legitimate reason for keeping the Plaintiffs out of the Brown School. That Defendant Tunney appears to have gone on a fishing expedition in search of a reason to keep Plaintiffs out of the Brown School is quite telling.

Restrictions on access based on the subject matter of the speech are permissible "only if the regulation is reasonable *and* not an effort to suppress expression due to the *view* expressed." *Ward v. Hickey*, 996 F.2d 448, 454 (1st Cir. 1993) (quoting *Perry Educ. Ass'n*, 460 U.S. at 46) (emphasis added).  The restriction imposed by Defendants on *all* religious speech is neither reasonable in light of the purpose served by the forum nor viewpoint neutral. *See, e.g., Lamb's Chapel*, 508 U.S. at 394

(excluding all religious speech constitutes unconstitutional viewpoint discrimination, the most egregious form of content-based censorship); *Rosenberger*, 515 U.S. at 832 ("discriminating against religious speech was discriminating on the basis of viewpoint"). Rather, it confirms an irrational hostility to religious speakers and religious messages. Defendants' blanket exclusion has no compelling interest to support it and is thus *prima facie* viewpoint discrimination and must be enjoined.

> f.    **Contrary to Defendants' assertion, allowing religious groups the same access as other non-profit organizations will not violate the Establishment Clause.**

Defendants have committed a common error. They mistakenly believe that allowing Living Hope Church to use the facilities would violate the Establishment Clause. *See Aff. Hebert* at ¶ 24. Yet, the Court in *Good News Club* found that allowing the religious club to meet on school premises on the same basis as other groups would cause "no realistic danger that the community would think that the District was endorsing religion or any particular creed." 533 U.S. at 113 (quoting *Lamb's Chapel*, 508 U.S. at 395).

> "[B]ecause our concern is with the . . . community writ large, the endorsement inquiry is *not about the perceptions of particular individuals* or saving isolated nonadherents from . . . discomfort . . . .
>
> . . . It is for this reason that the reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and the forum in which religious [speech takes place]."

*Good News Club*, 533 U.S. at 119 (quoting *Pinette*, 515 U.S. at 779-80 (O'Connor, J., concurring in part and concurring in judgment)) (citations omitted).

There is a "crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free

Exercise Clauses protect." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 250 (1990)(emphasis added). Plaintiffs' private speech cannot cause an Establishment Clause violation, whereas Defendants' denial of access to Plaintiffs violates both the Free Exercise (see discussion *infra*) and Free Speech clauses. Moreover, Defendants' denial constitutes hostility to religious speech in violation of the Establishment Clause. *Mergens*, 496 U.S. at 248.

2.    ESTABLISHMENT CLAUSE: **Singling out religious speech for suppression violates the Establishment Clause of the First Amendment.**

The Defendants' Policy as applied to Plaintiffs violates the Establishment Clause of the First Amendment. The Establishment Clause is violated when the State acts to either advance or inhibit religion. *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997) (citing *Witters v. Washington Dep't of Svcs. for Blind*, 474 U.S. 481, 485-86 (1986)). "[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel*, 508 U.S. at 394 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984)). Further, "'[t]he Establishment Clause does not license government to treat religion and those who teach or practice it, simply by virtue of their status as such, as subversive of American ideals and therefore subject to unique disabilities.'" *Mergens*, 496 U.S. at 248 (quoting *McDaniel v. Paty*, 435 U.S. 618, 641 (1978) (Brennan, J., concurring in judgment)). Singling out *religious* speech for suppression "would demonstrate not neutrality but hostility toward religion." *Mergens*, 496 U.S. at 248. The bottom line is that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Dep't v. Mosley*, 408 U.S. 92, 95-96 (1972). Defendants have violated all of these principles.

Defendants denied Plaintiffs any renewal of their previous contracts to use the Brown School

13

facilities for a number of suspect reasons. Rather than neutrally treat all requests for use the same, Defendants found a "glitch" to keep Plaintiffs from utilizing the Brown School. When faced with the possibility that they could be wrong on Establishment Clause jurisprudence, Defendant Tunney went on a fishing expedition to find a way to keep Plaintiffs out. Neither Mr. Tunney nor any other Defendant offered even one plausible reason for Plaintiffs' exclusion – only that they are religious. Singling out religious uses indicates a hostility to religion in favor of non-religion. The Policy as applied to Plaintiffs singles out religious speech not only for special detriment, but for outright suppression. Such a policy reflects an irrational hostility to religious speech on the part of Peabody Public Schools officials, which renders their exclusion of Plaintiffs unconstitutional.

### 3.   FREE EXERCISE OF RELIGION

"At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). "The crucial word in the constitutional text is 'prohibit': 'For the Free Exercise Clause is written in terms of what the government cannot do to the individual . . .." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 412 (1963)). Even if a regulation is facially neutral, "'in its application, [it may] nonetheless offend the constitutional requirement of neutrality if it unduly burdens the free exercise of religion.'" *Thomas Review Bd. Of the Ind. Employment Security Div.*, 450 U.S. 205, 220 (1972); *Walz v. Tax Comm'n*, 397 U.S. 664 (1970).

### a.   Substantial Burden

Without question, the Defendants have placed a substantial burden on the Plaintiffs where

14

they have prohibited them from exercising their faith, from speaking their religious views, and from engaging in their religious activities on the Defendants' premises, that has been opened by written policy to *any* not-for-profit group that serves the community at large or the general welfare. As discussed previously, Plaintiff Beverly Church of the Nazarene is a tax exempt organization as recognized by the Massachusetts Department of Revenue, and qualifies as an organization that benefits the community at large and the general welfare. Plaintiff Living Hope Church of the Nazarene is an extension of Beverly Church of the Nazarene, and seeks to benefit the community at large and the general welfare in Peabody through its religious exercise. Thus, Defendants' denial of Plaintiffs' renewal application thwarts Plaintiffs' purposes.

Again, Plaintiffs are not required to seek some other location to exercise their faith (although they have sought many other locations, and they were not able to find suitable facilities in Peabody other than Defendants' premises). This foundational principle is worth repeating: "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State*, 308 U.S. at 163. For the foregoing reasons, Defendants have placed a substantial burden upon Plaintiffs' right to the Free Exercise of Religion. Their religious practice has been completely forbidden in Defendants' facilities, and that without any compelling interest to support Defendants' decision.

### b. Neutrality and General Applicability Requirements

When the First Amendment right to the Free Exercise of Religion is at stake, rational basis review is only appropriate if the law in dispute is a neutral and generally applicable law. *See Employment Div., Dept. Of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990). Moreover, "if the object of the law is to infringe upon or restrict practices because of their religious

15

motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 533.

Obviously, the Defendants' Policy as applied to Plaintiffs is not neutral. In practice, the Policy excludes all religious organizations directly, and therefore fails the test for neutrality. Further, neutrality and general applicability are "interrelated, and the failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id.* at 531. With this principle in mind, Defendants' Policy as applied to Plaintiffs cannot be generally applicable – it is a blanket prohibition against religious use only.

### c. **Standard of Review**

Because Defendants have imposed a substantial burden on Plaintiffs, and because their Policy as applied to Plaintiffs fails the neutrality and general applicability tests, Defendants are required to justify their actions with a compelling state interest, and the regulation must be narrowly tailored to achieve that interest. As already discussed at length above, Defendants have failed to set forth any compelling interest, and Defendant Tunney's statements accusing Plaintiffs of running a commercial operation akin to a Kinko's are, at best, suspect. In fact, such a ludicrous accusation is telling of the actual hostility Defendants possess against religious entities.

### 4. **EQUAL PROTECTION**

The Equal Protection Clause requires the State to refrain from discriminatory action against similarly situated persons. As the Supreme Court has expressed on many occasions, "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Willowbrook v.*

16

*Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)); *see also Phyler v. Doe*, 457 U.S. 202, 216 (1982).

Further, if the State's action touches upon a fundamental right, such as Freedom of Speech or the Free Exercise of Religion, or targets a suspect classification, such as race, the action is subject to strict scrutiny. *See Heller v. Doe*, 509 U.S. 312, 320-21 (1993); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights . . . are given the most exacting scrutiny"); *Johnson v. Robinson*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right."). Strict scrutiny requires government to demonstrate that its action is narrowly tailored to achieve a compelling state interest. *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003). As discussed herein, the Defendants have infringed upon several of Plaintiffs' fundamental rights: Freedom of Speech, the Free Exercise of Religion, and the right to be free from any governmental Establishment of Religion. As such, strict scrutiny applies – and as Plaintiffs previously argued herein – Defendants have no compelling state interest to support their discriminatory decision to ban all religious users from using their public facilities. Finally, that blanket ban certainly cannot be considered narrowly tailored.

### D.  Granting the Injunction Would Do No Harm to Defendants and Is in the Public Interest.

Granting Plaintiffs permission to use otherwise available Peabody Public Schools facilities for religious activities causes no harm to Defendants whatsoever. In fact, Plaintiffs' prior use of the facilities exhibits a lack of harm. Plaintiffs are merely asking that Defendants apply their policy fairly and impartially. As previously discussed, Defendants' only assertion of any problem is their misunderstanding of Establishment Clause jurisprudence. Any further rationale is and would be

17

contrived.  Plaintiffs are not asking for any special favors.  Yet, as previously argued, Defendants' denial of permission to use otherwise available facilities for Plaintiffs' protected expression constitutes past, present and continuing violations of Plaintiffs' constitutional rights.  The balance of harms weighs heavily in Plaintiffs' favor.

The public interest at stake also favors Plaintiffs.  It is in the public interest that public officials act in a manner that protects First Amendment rights and that they fairly and impartially draft and implement public policies.  The public interest is, in fact, harmed when public officials single out religious speech for suppression, as our Establishment Clause and Free Exercise jurisprudence teaches.  *See, e.g., Church of the Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 543 (1993) ("[G]overnment, in pursuit of legitimate interest, cannot, in a selective manner, impose burdens only on conduct motivated by religious belief . . . .").

## III.    PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiffs meet the requirements for obtaining a Preliminary Injunction in this matter, and Plaintiffs respectfully request that this Court issue a Preliminary Injunction enjoining Defendants, their agents, employees, attorneys, and all those acting in concert with them, from denying Plaintiffs use of otherwise available Peabody Public Schools facilities, on the same terms and under the same conditions as all other similar users pending resolution of this matter in open court.

Respectfully submitted this 19th day of November 2004.

AMERICAN CENTER FOR LAW AND JUSTICE, NORTHEAST

Thomas M. Harvey

Thomas M. Harvey, Esq.
MA Bar No. 225050
One Constitution Plaza
Boston, MA 02129
(617) 886-0364
Fax: (617) 598-3900

American Center for Law & Justice
Vincent P. McCarthy, Senior Regional Counsel†
          CT Bar No. 100195
Kristina J. Wenberg, Esq.†
          CT Bar No. 421555
P.O. Box 1629
8 South Main Street
New Milford, Connecticut 06776
(860) 355-1902
Fax: (860 355-8008

† Pro Hac Vice Motion filed simultaneously

19